MANUEL E. LARDIZABAL, Respondent, *v.* WASHINGTON S. VALENTINE, Appellant.

First Department, December 6, 1918.

**Partnership — joint adventure — agreement to finance foreign concessions and divide profits — evidence establishing joint adventure.**

Appeal from an interlocutory judgment requiring the defendant to account to the plaintiff for moneys due on account of a joint adventure or partnership. The plaintiff claims that the defendant undertook to finance as a

joint enterprise certain foreign concessions upon a basis of a division of the profits, but the defendant contends that there was no joint enterprise between himself and the plaintiff, and that certain moneys paid for the successful financing of the foreign concessions to the defendant's nephew were for services rendered by said nephew and not by himself. Evidence examined, and *held*, that the trial court properly found that there was a joint enterprise and that the defendant should account to the plaintiff for moneys received.

Such interlocutory judgment for an accounting could be made without bringing in the defendant's nephew as a necessary party to the suit, and the trial court was justified in finding that the defendant's nephew received said moneys for the use and benefit of the defendant as his *alter ego*.

DOWLING, J., dissented.

APPEAL by the defendant, Washington S. Valentine, from an interlocutory judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on or about the 18th day of May, 1918, directing him to account to the plaintiff for the amount found due on account of a joint adventure or partnership claimed to have been made between the parties.

The judgment was entered upon the decision of the court after a trial at the New York Special Term.

*Laurence A. Sullivan* of counsel [*Henry L. Sprague*, attorney], for the appellant.

*Walter Rogers Deuel*, for the respondent.

SMITH, J.:

Prior to the transactions in question the plaintiff and defendant had been engaged in a joint enterprise in reference to the construction of the San Pedro Light and Power Company plant in Honduras. The plaintiff was the contractor and the manager in the construction of that plant and the defendant negotiated the financial end of the transaction. At the time of the transactions here involved the plaintiff had an office with the defendant. They were personal friends, and there is a dispute as to the extent to which they were jointly interested in business transactions.

In November, 1914, one Rafael Montufar came to this country from Costa Rica. He assumed to represent some concessions for oil lands in the Republic of Costa Rica. In that month he made a written contract with the plaintiff,

First Department, December, 1918.        [Vol. 185.

wherein it was provided that " Montufar in his capacity as legal representative of certain individuals in the Republic of Costa Rica, owners of oil lands and oil concessions in said Republic, grants and conveys sufficient power to Lardizabal, so that he can negotiate with any person or company, and so that he is in power to take charge of the concessions that he represents under the following obligations." Then follow specifications of percentages that plaintiff should receive and a provision for the deposit in the Bank of Costa Rica of $5,000 as a guaranty fund, and other provisions immaterial to the questions presented.

Montufar spoke English very imperfectly and understood it very little when spoken by others. He had known the plaintiff before this time and asked the plaintiff to interest the defendant in obtaining money for the financing of these concessions. This the plaintiff did and the defendant undertook to obtain financial backing for the development of the concessions. It turned out, however, that the title to the concessions of those whom Montufar represented was not complete. A new President of Costa Rica would not approve. So this enterprise entirely fell through. The evidence establishes that when Valentine undertook the financing of these concessions they were undertaken upon the basis of a division of profits between the defendant and plaintiff. This fact is supported by natural presumption. With the absolute power to negotiate in reference to these proceedings given to the plaintiff by this instrument in writing by Montufar, he did not negotiate with Valentine and would not naturally have done so without exacting some compensation for his agency.

Montufar went back to Costa Rica and brought back to this country other concessions, the development of which he desired Valentine to finance. The fact that the first enterprise was undertaken as a joint enterprise between the plaintiff and the defendant is somewhat corroborative of the plaintiff's claim that the second enterprise which was finally carried out was undertaken upon the same understanding. Montufar had, in some way, met two men by the names of Greulich and Stelling, and had had some negotiations with them in reference to financing the concessions brought upon his second

visit. He again went to Lardizabal and sought to have him interest Valentine to aid in the negotiations between himself and Greulich and Stelling. The defendant swears himself that the plaintiff made the request of him that he give such assistance. The defendant at first refused to undertake the matter, but after having made inquiry as to the responsibility of Greulich and Stelling, the defendant did undertake the matter and did consummate an agreement under which these latter concessions were financed. It is upon this partnership undertaking to finance these concessions brought by Montufar upon his second visit that this action is brought and this accounting demanded.

The trial judge has found the existence of this partnership or joint enterprise agreement and that it was violated by the defendant by his refusal to recognize the same and has appointed a referee to state the account between the partners.

The first challenge is to the sufficiency of the evidence to establish this joint undertaking. The agreement is sworn to explicitly by the plaintiff. The witness De Brigard says that the defendant attempted to get him interested in the project to finance these concessions and told him that the defendant and the general (referring to this plaintiff) " were interested in properties and oil lands in Costa Rica, and that the General had brought this business to him like he had brought me and the General was his partner." The witness Ferrari swears that he was in the office of Mr. Valentine as an employee, that he knew of the attempt made to finance the first project and its failure and that Mr. Valentine stated " that Mr. Lardizabal had brought some papers in reference to some oil properties in Costa Rica which he wanted to find some party to finance. I also heard in the office that they had placed that matter." This witness afterwards went to Costa Rica in this very matter and stated that he heard Mr. Valentine, the defendant, talk about Lardizabal's interest in the matter, and swore " That was during the month of March, the middle of March. It was my understanding that Mr. Valentine was acting to assist Mr. Lardizabal in carrying it through and whatever profit there was they were to divide. Q. And you got that understanding from Mr. Valentine? A. Yes, I spoke to Mr. Valentine himself many times about that."

On October 2, 1916, the plaintiff wrote a letter to the defendant in which he stated that he must leave for the south and continued, " and as you know I have a written contract pending with Dr. Montufar linked with the one you made with Dr. Greulich, whom I brought to you, with the previous arrangement between us, of dividing the profits which would come out of that contract. Being my wish to leave as my representative in this city Mr. Louis De Brigard with full instructions not only with that which refers to Dr. Montufar, but the part which you have to give me, I would be very much obliged if you will let me know if you have any objections in dealing with Mr. De Brigard at the time of dividing the part which corresponds to me in this business." In answer to that letter Mr. Valentine wrote: " My dear Sir: In answer to your favor of the second and also of to-day's date, I desire to advise you that Sr. Don Louis de Brigard will be entirely satisfactory to me as your representative to treat with when the time comes regarding the written contract that you have with Dr. Montufar in reference to petroleum." Signed by the defendant. It is true that the letter does not in terms admit this contract with himself to divide the profits, but the trial court had the right to consider the correspondence and the effect of his failing to disclaim any contract between himself and the plaintiff as to the division of the profits between them. If the defendant were acting frankly with the plaintiff should he not have made a disclaimer at that time? If no such contract existed between the parties, the specification in his reply that he would be glad to talk with the plaintiff's representative with reference to the contract with Dr. Montufar indicates an endeavor on his part to decline to make an admission of a fact which he neglected to deny. That the defendant must have understood the contract referred to as the one made between the plaintiff and himself is evident from the fact known to defendant that the contract of the plaintiff with Montufar made no provision for a division of the profits with Montufar. The fact that such a contract did exist is further fortified by the evidence and actions of the defendant himself. He admits the request of the plaintiff to take up this matter which he finally took up and carried to a successful

termination. He admits that there were many conferences between Montufar and the *plaintiff* and himself during these negotiations. He admits that the plaintiff told him that Montufar was to receive a commission which would be divided between Montufar, the plaintiff, and himself, and he claims to have replied to that information that the plaintiff could get anything out of Montufar: " I will be glad to let you have it, I have no interest in it." He swears that he had first refused to undertake the business, but finally told the plaintiff that he would assist Mr. Montufar in his communications and negotiations with Dr. Greulich and that he did this purely as a matter of friendship. The evidence of Montufar tends in a way to support defendant's denial of the copartnership. He admits, however, the signing of the original power of attorney to plaintiff. The trial judge has seen the witnesses on the stand and can better judge of their credibility than can we from the record.

But the defendant now takes the position not only that there was no partnership existing between him and the plaintiff, but that he himself had no agreement and took no part in these transactions for compensation. But this claim under the evidence of what was done by him and of the contracts made with him by Greulich and Stelling, is a suspicious circumstance. The trial court has found that defendant's evidence in this respect is false and his endeavor to cover the profits in his nephew's hands might well be deemed an admission of his liability to plaintiff. Soon after these negotiations had started he procured Greulich and Stelling to employ his nephew, Lincoln Valentine, to go to Costa Rica and to assist in procuring the concessions necessary for the working out of the enterprise. He now claims that all he did in the transaction was not done for compensation, but as a matter of assistance to his favorite nephew, Lincoln Valentine, and that the liability of Greulich and Stelling was to Lincoln Valentine and not to himself. Under that contract Lincoln Valentine received in cash $212,000 and some 300,000 shares of stock in the Costa Rica Oil Corporation. To this the defendant makes no claim on the ground that the contract was with Lincoln Valentine and not with himself. In this connection

there is a most singular incident. Upon the 18th day of November, 1916, there was an agreement signed between Greulich and Stelling and Washington Valentine for the financing of these corporations and the compensation to be paid therefor; upon exactly the same day exactly the same agreement was made between Greulich and Stelling and Lincoln Valentine. The defendant now claims that this agreement with Lincoln Valentine was substituted for the one to himself, but why any agreement between Greulich and Stelling to himself should have been made if he were not acting for compensation is a fact that is nowhere satisfactorily explained. The trial court has found that the said Lincoln Valentine received this $212,000 and 300,000 shares of the stock of the Costa Rica Oil Corporation, " for the use and benefit of Washington S. Valentine, as Washington S. Valentine's *alter ego*," and he has ordered a reference that the defendant account to the plaintiff for the profits earned, " upon the performance of the contract entered into between Lincoln G. Valentine and Harry Sinclair," which was the contract under which Lincoln Valentine received these moneys and this stock.

While the trial court has not found specifically that the defendant fraudulently used Lincoln Valentine as his *alter ego*, he has found that the moneys and the stock were received by Lincoln Valentine for the use and benefit of Washington Valentine and for which Washington Valentine must account, and this brings us to the second question for consideration, and that is the defendant's claim that this judgment is not proper without the presence of Lincoln Valentine in the action. There is no such plea in the defendant's answer. Under section 452 of the Code of Civil Procedure, the authority of the court to direct that a third party be brought in is only when the controversy cannot be determined without the presence of such third party. If Washington Valentine had received these moneys and this stock and had transferred them to a third party, this action for an accounting would lie and the defendant be charged with the plaintiff's proportion of the money and the value of the stock which the defendant had transferred. In that case the transferee would not be a necessary party or a proper party to the action. This in effect is what the defendant has done if the stock be not held in fact for the

defendant by Lincoln Valentine. The consent that the stock and the moneys be transferred to Lincoln Valentine, therefore, was equivalent to its transfer to him. Lincoln, of course, is not bound by this judgment, nor is he a necessary party to this determination between these partners as to the amount of money for which the defendant is required to account to the plaintiff. The application of the defendant seems to be in the nature of an application for an interpleader, but no conditions exist to authorize the granting thereof.

The judgment should, therefore, be affirmed, with costs.

CLARKE, P. J., SHEARN and MERRELL, JJ., concurred; DOWLING, J., dissented.

Judgment affirmed, with costs.